IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 25-mj-00088-TPO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

YONAIKER ALEXANDER FERNANDEZ-PEDRON,

    Defendant.

---

**RELEASE ORDER**

---

    On April 30, 2025, this Court presided over Preliminary and Detention Hearings. Based on the information provided by the parties, and the lack of evidence to support his risk of flight and danger to the community, this Court finds that the government did not meet its burden in demonstrating that there were no conditions that would reasonably assure the defendant's appearance as required and the safety of the community. As a result, this Court intends to release the defendant on conditions. The Court held the matter over for the parties to consider appropriate conditions. This Release Order is meant to supplement, not supplant, the factual findings and rulings made at the April 30th hearing.

**I.**     **General Concepts Relating to Detention**

    First, as always, the Court is guided in its analysis by the Bail Reform Act (18 U.S.C. §3142 *et seq*.) and the relevant case law surrounding pretrial release. The Court is mindful of the landmark United States Supreme Court case of *United States v. Salerno* that states: "[i]n our

society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." 481 U.S. 739, 755 (1987).

Second, the Bail Reform Act requires the Court to make an initial determination of the type of offense before considering detention. There are certain offenses that are automatically, based on the charge itself, eligible for detention. 18 U.S.C. §3142(f)(1). There are other offenses that *could* require a detention hearing, depending on additional circumstances. 18 U.S.C. §3142(f)(2). If the offense falls within the latter category of offenses, then to even consider detention, the government must demonstrate that the case involves "a serious risk that such person will flee; or a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injury, or intimidate, a prospective witness or juror." 18 U.S.C. §3142(f)(2). On April 24, 2025, this Court found that the case *involves*[1] a serious risk of flight and set the matter over for a Detention Hearing.

The parties agreed that the case is not one that carries with it a presumption of detention as described in 18 U.S.C. §3142(e)(3). As a result, the government bears the burden of proving that there is no combination of conditions that will reasonably assure the appearance of the defendant or the safety of the community as required.

Third, the defendant's charge itself, combined with his pending deportation hold, does not equate to a serious risk of flight. In *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017), the Tenth Circuit made that point clear when it found that "a risk of involuntary removal

---

[1] The Court did not find, at the Initial Appearance or now, that the defendant poses a serious flight risk. While this Court notes that the defendant poses a flight risk generally, the Court finds that that risk will be mitigated substantially based on the strenuous release conditions this Court intends to impose, as outlined below.

does not establish a 'serious risk that [defendant] will flee' upon which pre-trial detention may be based." *Id.* at 1337. As explained below, in the present case, the charge and accompanying deportation hold are not indicative of a risk of flight at all.

Fourth, the Court must use the factors listed in 18 U.S.C. §3142(g) in order to determine whether release is appropriate. The Court will also consider the defendant's incentive and ability to flee as part of its analysis.

**II.   Analysis**

Using the §3142(g) factors as a guide, release is appropriate:

**1)  The Nature and Circumstances of the Offense Charged**

The charged offense is not an offense involving violence, firearms, a minor victim, or a controlled substance. In fact, the only federal offenses charged are under 18 U.S.C. §2113(c), possession of stolen bank property, and 18 U.S.C. §2, aiding and abetting. As demonstrated by the government's evidence at the Preliminary Hearing, Mr. Fernandez-Pedron's role in the alleged offense was limited and likely would require the government to proceed under an aiding and abetting theory. The government believes, and the evidence supports, that he drove a vehicle to two different banks, one in Lovell, Wyoming and the other in Greybull, Wyoming, where other individuals from the vehicle stole money from the ATMs. The two thefts occurred late in the night of March 14, 2025, and in the early morning of March 15, 2025, and resulted in the loss of approximately $44,000.[2] Mr. Fernandez-Pedron admitted his involvement when interviewed by law enforcement following his arrest. During a subsequent search of Mr. Fernandez-Pedron's

---

[2] The Criminal Complaint alleges that the same vehicle was involved in an ATM theft on March 16, 2025, but the government has provided no evidence linking Mr. Fernandez-Pedron to that crime.

3

apartment and the involved vehicle, no proceeds from the theft or firearms were located. The government provided no information that Mr. Fernandez-Pedron is connected with any sort of violent activity or that his involvement in ATM thefts extends beyond the two incidents that are alleged in the Criminal Complaint.

### 2) Weight of the Evidence

The weight of the government's evidence on the charged offense appears strong. The government provided photographs of Mr. Fernandez-Pedron behind the wheel of the vehicle during the ATM thefts. He also admitted his involvement in those offenses. However, in the context of detention, the weight of the evidence only may be considered as it relates to flight risk and/or dangerousness. Here, the weight of the evidence does not provide support for a finding that Mr. Fernandez-Pedron is a flight risk or a danger to the community such that no combination of conditions may reasonably assure his appearance in court and the safety of the community. While the offense has a statutory maximum of 10 years of imprisonment, the likely guideline range would be well below the maximum. Mr. Fernandez-Pedron is eligible for probation. And by defense counsel's preliminary estimation, Mr. Fernandez-Pedron would be in Criminal History Category I (with no criminal history)[3] and the base offense level under USSG §2B1.1 would be approximately 12 (after trial) or 10 (after a plea), resulting in an estimated guideline range of either 10-16 months or 6-12 months, ranges more consistent with a misdemeanor offense. Those ranges may be even lower if Mr. Fernandez-Pedron is determined to have played a minor/minimal role in the offense. Even sentences within the advisory guideline ranges are not

---

[3] Mr. Fernandez-Pedron's only other pending charge relates to the same conduct charged in the Criminal Complaint.

the type that would drive an individual to flee.

### 3) The History and Characteristics of the Defendant

As proffered by defense counsel, Mr. Fernandez-Pedron is 27-years old. He is from Venezuela and came to the United States with his wife and two young children in November of 2024. They first lived in Chicago, but recently relocated to the Denver area. His sister lives in this area. His wife is in the process of seeking asylum status. Mr. Fernandez-Pedron had obtained employment authorization to work in the United States. Mr. Fernandez-Pedron has no known medical or mental health issues.

Additionally, Mr. Fernandez-Pedron posted $1,000 in Denver County District Court on a fugitive warrant relating to the Wyoming state charge, something that provides him with both an incentive to remain in this jurisdiction and to attend court in Wyoming.

### 4) Danger Posed by the Defendant

While the evidence suggests that Mr. Fernandez-Pedron poses some danger to the community based on his participation in the charged offense, this is not the level of danger that conditions of release would be unable to address. In other words, the government's evidence of Mr. Fernandez-Pedron's participation in this theft offense does not constitute clear and convincing evidence of a danger to the community. This Court finds that requiring Mr. Fernandez-Pedron to reside in a halfway house, be subject to GPS monitoring, and comply with pretrial supervision will minimize any danger that he poses and reasonably assure the safety of the community.

The Court also considers Mr. Fernandez-Pedron's <u>incentive</u> and <u>ability</u> to flee. Other than being charged with a crime in the District of Wyoming, there is nothing specific to justify the

defendant's incentive to flee in the present case. His ties to the community, including family members, potential employment, and a posted bond demonstrate multiple incentives to stay in the District of Colorado. And any risk of flight that he poses can be addressed by strict conditions of release.

The Court does not find immigrant defendants are more likely to flee than non-immigrant defendants as such an assumption is simply not supported by any concrete data. *United States v. Figueroa-Alvarez*, 681 F.Supp.3d 1131, 1140 (D. Idaho 2023). In fact, empirical evidence suggests exactly the opposite: according to a March 2022 United States Department of Justice Special Report, "alien defendants granted pretrial release were *less* likely to fail to appear or violate conditions of release than non-alien defendants. *Id.* (emphasis in original) (citing a **0.5% failure to appear rate** from "Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011-18," U.S. Dept. of Justice – Office of Justice Programs (March 2022) (found at [Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011–2018 | Bureau of Justice Statistics](#)) (bjs.ojp.gov/library/publications/pretrial-release-and-misconduct-federal-district-courts-fiscal-years-2011-2018). Considering that the overall failure to appear rate nationwide hovers between 1.1%-1.6%, this is significant. *See* Alison Siegler, "Freedom Denied," Univ. of Chicago Law School (October 2022) (found at [Freedom Denied](#)) (freedomdenied.law.uchicago.edu). This weighs in favor of release.

As it relates to Mr. Fernandez-Pedron's ability to flee, the government has provided the Court with no evidence that he has access to a large amount of money to travel, fraudulent travel documents, or specific ties to individuals outside of the country that could facilitate international travel. Other than his general ties to Venezuela and the family members that live there, there is

6

no evidence to support the defendant's specific ability to flee. It is not this Court's role to deter or punish the defendant at this stage; that is the role of the sentencing judge under 18 U.S.C. §3553(a), should the case get to that point.

When considering the totality of all these circumstances, the large majority of the factors favor release. While the Court notes the government's concerns about the defendant's danger and flight risk, these concerns can be addressed by setting a strict set of release conditions that will reasonably assure the defendant's appearance and the safety of the community. As a result, this Court finds that the government failed to prove by a preponderance of the evidence that there are no conditions that will reasonably assure the defendant's appearance in court as required. The government also failed to prove, by clear and convincing evidence, that there is no combination of conditions that will reasonably assure the safety of the community. As a result, the Court believes that a release on conditions[4] is appropriate.

ACCORDINGLY, for the reasons this Court gave at the Detention Hearing, as supplemented herein, this Court **DENIES** the government's motion to detain the defendant and **GRANTS** the defendant's request for pre-trial release subject to a combination of conditions that will be set at the Release Hearing.

IT IS SO ORDERED.

---

[4] The Court plans to impose a significant set of conditions, including, but not limited to pretrial supervision, halfway house placement, GPS monitoring, and substance abuse testing.

DATED at Denver, Colorado, this 7th day of May, 2025.

BY THE COURT:

_____
Timothy P. O'Hara
United States Magistrate Judge